[No. 2577.   Decided June 17, 1897.]

WINNIFRED MEARS, *Respondent*, v. PERRY W. LAMONA *et al.*, *Appellants.*

VESTED REMAINDER — SALE FOR DEBTS — RIGHTS OF PARTIES.

When an action in the nature of creditors' bill is brought for the purpose of subjecting to the lien of a judgment the vested interest of the debtor in his mother's estate, in which he had a future right of possession, with no beneficial interest meanwhile, and an immediate sale of his interest would cause an inequitable sacrifice of his interests, the court should refuse to order a sale of his interest prior to the reduction of his estate to possession.

While the vested interest in an estate of a devisee having a future right of possession, but no beneficial interest meanwhile, may be reached by his creditors, yet where an action in the nature of a creditor's bill is brought for the purpose of subjecting such vested interest to the lien of a judgment, the court, in ordering

sale of his interest in the estate, is warranted in decreing that sale be postponed until his intangible interest is reduced to possession, when it appears that an immediate sale would cause an inequitable sacrifice of his property, and that the creditor would be compelled to wait but a few years in consequence of such postponement.

Appeal from Superior Court, Spokane County.—Hon. JAMES Z. MOORE, Judge. Decree modified.

*W. H. Smiley,* for appellants.
*Jones, Belt & Quinn,* for respondent.

The opinion of the court was delivered by

SCOTT, C. J.—This is a proceeding whereby the plaintiff is undertaking to subject the interest of the defendant, Perry W. Lamona, in his mother's estate to the payment of a judgment obtained against him on a promissory note. An execution had been issued and returned *nulla bona.* The interest aforesaid arises under the terms of the will of the mother, Hessa Ann Lamona, which, omitting the formal parts, is as follows:

" First. I bequeathe to Mrs. Winifred Fruit the sum of two hundred and forty dollars, to be paid from my said estate in lawful money of the United States, without deduction or diminution from said sum for any purpose, and without interest thereon up to the time my estate shall be by my executors distributed as hereinafter specified, but nothing herein contained shall prevent my said executors from paying said sum from the proceeds of my estate by the sale of personal property or from the increase of the community property now belonging to my husband, John H. Lamona, and to myself at any time my said executors may deem it best to make such payment.

" Second. I give and bequeathe to my husband, John H. Lamona, the sum of two thousand dollars, to be paid to him out of my estate, in lawful money of the United States, without deduction or diminution from said sum for any

purpose whatsoever, and without interest on said sum up to the time hereinafter provided for the distribution of my said estate, and nothing herein contained shall be construed to prohibit the sooner payment of said sum to the said John H. Lamona upon the unanimous consent and agreement of my said executors.

"Third. I give and devise the rest, residue and remainder of my said estate, consisting of my interest in the community property of myself and my said husband, John H. Lamona, consisting of both real and personal property, to my son, Perry W. Lamona, and to my daughter, Alma E. Lamona, share and share alike. And it is my wish that said community property, both real and personal, be kept intact as far as may be possible and managed and controlled by my said executors, John H. Lamona and Perry W. Lamona, until my said daughter, Alma E. Lamona, shall become of lawful age, or until her sooner decease, deducting from my interest in said community property a proportionate share of all necessary expenses of keeping, maintaining and educating my said daughter, Alma E. Lamona, and also the proportionate share of all taxes, interest and insurance on such property, but the said expenses of education, keeping and maintenance of my said daughter, together with the interest, insurance and taxes upon said property, are to be paid from the rents, issues and profits of said community estate, each bearing the proportionate share thereof, and I give and bequeathe to my said husband, John H. Lamona, all the rest, residue and remainder of the rents, issues and profits of my share of said community property.

"Fourth. But in case it becomes necessary or profitable, in the opinion of my said executors, that a sale of any of the property belonging to said estate shall be made, then the share of said property belonging to my said estate shall be placed at interest for the benefit thereof, upon approved and ample real estate security, or in United States, state or municipal bonds of approved value as security.

"Fifth. When my said daughter, Alma E. Lamona, shall become of lawful age, or when she would have reached the

age of eighteen if living, then it is my order that my said son, Perry W. Lamona, have his said share of the proceeds of my said estate at its then value the same being one-half of my interest in said estate, the rents thereof and interest thereon, if any, having been appropriated by my said husband, John H. Lamona, but all increase in value of the real estate and personal property being construed to be a portion of my said estate for distribution under the provisions hereof.

" Sixth. When my said daughter, Alma E. Lamona, shall have arrived at the age of twenty-five years, it is my order that her share of said estate be paid to her, under the provisions of this will, but until said date her said share of my said estate shall be held in trust by my said executors for her use and benefit, paying to her the rents, issues and profits thereof for her support and maintenance. And if it shall be deemed for the best interests of my said estate that the real and personal property thereof shall be sooner sold, that the same shall be invested in approved securities, and held, subject to the provisions of this will, for payment to my said son Perry W. Lamona, after August 12th, 1899, if he shall so elect, and to my said daughter, Alma E. Lamona, after she shall have arrived at the age of twenty-five years.

" Seventh. In case my said daughter, Alma E. Lamona, shall not live to reach the age of eighteen years, or in case of her subsequent death without marriage and without issue, then her proportion of my said estate shall be divided, share and share alike, between my said husband, John H. Lamona, and my said son, Perry W. Lamona, and in case of the death of my said husband before my said daughter, Alma E. Lamona, shall have arrived at the age of eighteen years, then it is my wish that the guardianship of my said daughter be intrusted to my said son, Perry W. Lamona, and that her said estate be held by him in trust for her, and to be paid to her, the rents, issues and profits thereof, for her maintenance and support until she arrives at the age of twenty-five years, and her interest therein to be paid to her thereafter as she may direct.

"Eighth. I hereby nominate and appoint my said husband, John H. Lamona, and my said son, Perry W. Lamona, both of the city and county of Spokane and state of Washington, to be the executors of this my last will and testament, without bonds, and with full power to deed, mortgage, sell and convey my said estate, both real and personal, and to do any and all things necessary or proper for the management and control of the trust herein imposed, providing, however, both my said executors shall concur in mortgaging, selling and conveying any portion of my said estate, giving also to my said executors power to act as herein provided without the intervention of the courts of this state, and without further proceedings therein than the probating of this my last will and testament, and it shall not be necessary that letters testamentary shall be taken out, and this my last will and testament shall be sufficient authority for the performance of any and all acts necessary or proper as in this will directed, and I hereby revoke and annul all former wills by me made, and declare this instrument to be my last will and testament."

The will was admitted to probate in the superior court of Spokane county, where the present proceeding originated. Letters testamentary were issued to Perry W. and John H. Lamona and they entered upon the execution of the trust. After the return of the execution, and after the expiration of the year for the presentation of claims, the plaintiff presented a petition to said court on the equity side setting up the foregoing matters, that the estate was of the value of $45,000, and that the defendant, Perry W. Lamona, had no other property, and prayed for an order or decree subjecting the interest of said defendant in the estate, or so much thereof as might be necessary, to the satisfaction of her claim, and that said executors be required to dispose of a sufficient amount of said property within such time as the court might deem just for the purpose of obtaining the necessary funds therefor.

A motion to strike out certain parts of the complaint or petition was granted, but under the present aspect of the case no material question is raised thereby. A demurrer was interposed and overruled, and the defendants answered alleging that the said Alma E. Lamona would not reach the age of eighteen years until August 18, 1899, and asked that the proceedings be dismissed. The plaintiff moved for judgment on the pleadings and the court granted it, whereupon this appeal was taken.

The argument of the appellants is largely based upon a misconception of the judgment of the court, as we view it. The appellants understand by the judgment that the court directed a sale of a part of the property of the estate, and contend that this could not be done under the terms of the will, as the property was to be kept intact until the daughter arrived of age; and of course this contention would have to be sustained upon the statement of it, as the defendant Perry W. Lamona obtained no title to any specific property under the will, and the income received from the whole of it was to be devoted to the support and education of the daughter until she attained her majority, with the surplus, if any, to the husband, so that, until the daughter became of age, the defendant Perry W. Lamona had no beneficial interest in the estate whatever. The appellants characterize the interest of said defendant in the estate as a vested remainder, and, while not technically correct, as, strictly speaking, such a term can be applied only to lands, and the estate consisted of both real and personal property, with power conferred upon the executors to convert the real estate into money if they should deem it advisable, thus making the interest of said defendant what might be termed more properly a *quasi* remainder (20 Am. & Eng. Enc. Law, p. 894), yet the distinction is not very

material in this instance, and the designation is substantially correct. While said defendant had a vested interest in said estate, with a certain future right of possession, it is clear that he had no authority or right to sell or convey any specific property belonging to the estate, and his creditors certainly could obtain no greater rights in the property than he himself had under the will. The misconception by the appellants of the court's order was probably based upon its findings contained in the decree, one of which was as follows:

" 2. That the plaintiff is entitled to a decree subjecting the interest of the said defendant Perry W. Lamona in the estate of said Hessa Ann Lamona, deceased, to the satisfaction of plaintiff's said judgment, and declaring the same to be a lien upon his interest therein, and requiring said executors to dispose of a sufficient amount of said property to pay and satisfy the plaintiff's said judgment within a reasonable time."

But if the findings were indefinite in this particular the decree rendered thereon was not. It was as follows:

" It is therefore ordered, adjudged and decreed that the interest of the said defendant Perry W. Lamona in and to the estate of Hessa Ann Lamona, deceased, be, and is hereby declared, subject to the lien of plaintiff's said judgment, procured on the 17th day of December, 1895, for the sum of seven hundred fifty-two and 10-100 dollars ($752.10) and that so much of his interest in said estate as may be necessary, be sold by the said executors to obtain sufficient funds to pay said judgment within sixty days (60) days, or that said executors show cause to this court why they cannot do so."

By this decree the court ordered that only the interest of said defendant in said estate, or so much thereof as might be necessary, should be sold to satisfy the plaintiff's judgment, and did not direct the sale of any tangible property.

The respondent contends that, as Perry W. Lamona took a vested interest in his mother's estate at the time of her death, this would carry with it the right of alienation, and that a restriction upon the right to alienate under such circumstances, if contained in the will, would be void.    It is sufficient to say that no such restriction is contained in the express terms of the will as to his interest, and we are of the opinion that the right to alienate such interest existed, although he could not convey any specific property belonging to the estate.

The contentions of the respondent in this particular are somewhat involved, and, if we understand them, seem to conflict.    The authorities cited in her brief apply only to cases where the beneficial interest had vested, and in such cases some courts have held that a restriction upon the right to alienate is void and that the property might be reached by creditors.    See *Hallet v. Thompson*, 5 Paige Ch. 583; *Sparhawk v. Cloon*, 125 Mass. 263; *Sears v. Putnam*, 102 Mass. 5.

But whether the argument of the respondent is directed to the intangible interest or the tangible property, the cases cited by her have no important bearing upon this case, as it stands here.    Perry W. Lamona had no immediate beneficial interest and would have none until his sister arrived of age.    He could not reduce his interest in the estate to possession before that time, and the provisions postponing his right of possession and enjoyment were undeniably valid, under all the authorities.    Owing to the power conferred upon the executors to convert the real estate into money at their option and to loan the same, there was also an uncertainty as to the kind of property which he would ultimately take.    He simply took a vested interest in the estate at the time of his mother's death, with a certain future right of possession, with no beneficial interest mean-

while, and it was not such an interest as could be reached by an execution. Freeman, Executions (2d ed.), § 122.

Our statutes are not as full and explicit with reference to reaching such interests as those of most of the other states, and many of the cases are not applicable for that reason. It not being any tangible property, nor a debt due, nor a fund in court, none of the provisions with reference to garnishment here would seem to cover the case, from the consideration which we have given them, and it is not contended that they do. If it can be reached by virtue of any statutory authority in this state, it must be found in ch. 6, title 8, vol. II of the Code, providing for proceedings supplementary to execution—at least we have found no other statute bearing upon the subject, and none has been cited by the parties; in fact, neither of them has cited the above chapter, and apparently the respondent has not relied upon its provisions. In *Murne v. Schwabacher*, 2 Wash. T. 130 (3 Pac. 899), the supreme court of the territory held that proceedings of this kind were in the nature of, and intended to serve the end of, a creditor's bill, and we are aware of no change in the statutes up to this time that would require a different construction. There might be some ground for contending, however, that proceedings under said chapter are only intended for the purpose of reaching tangible property, except in the case of its provisions with reference to debts. But whether or not proceedings thereunder can have the full scope of a creditor's bill is not important here, for otherwise the remedies would be concurrent, and a creditor's bill is intended to reach all species of property not exempt, which could not be reached by an execution for the satisfaction of a judgment. *Pacific Bank v. Robinson*, 57 Cal. 520 (40 Am. Rep. 120); *Hadden v. Spader*, 20 John. 554; *McDermutt v. Strong*, 4 Johns. Ch. 687.

The proceeding resorted to, while seemingly appropriate, is somewhat novel. As stated, it is not claimed to have been brought under the provisions of any statute, nor is it claimed to be a creditor's bill; nothing is said upon the subject. But of course it is in the nature of a creditor's bill, and no technical questions of procedure have been raised. The plaintiff filed her petition or complaint in the court where the will was probated, and the defendants voluntarily appeared and resisted it. While in their answer they asked for a dismissal, their real contention seems to have been that the court had no authority to direct a sale before the interest of the defendant Perry W. Lamona in the estate could be reduced to his possession; at least, that is their contention here. We take this from the explicit concession in the appellants' brief, the concluding paragraph of which is as follows:

" The appellants, therefore, submit, in closing, as they did in the beginning, that the decree should be reversed; and that the lower court should be directed to enter a decree declaring the judgment to be a lien on the *remainder*; and that the executors be required to dispose of a sufficient amount of the property after August 12, 1899, to satisfy respondent's claim. This is consonant with justice. Otherwise, the sister will suffer for the brother's debts."

Although this was made upon the theory that the court had directed a sale of tangible property belonging to the estate. It is apparent that there is no desire on the part of the defendant Perry W. Lamona to avoid payment of the debt, and the sole question raised is as to whether the court could enforce the payment of the debt prior to the time that the estate should be reduced to the possession of said defendant, as stated; and it is not free from difficulty. The interest of said defendant in said estate was, of course, property, and the policy of the law is to subject every

species of property of a judgment debtor, above exemptions, to the payment of his debts. The vesting of estates and the right to alienate property are also favored in the law, and as a matter of right the defendant Perry W. Lamona could at any time after the death of his mother, by any appropriate conveyance, have disposed of his interest, or any part of it, in the estate. Tiedeman, Real Property (Enlarged ed.), §§ 399, 400. Practically, however, there would have been many difficulties in the way, for it is evident that under the terms of the trust imposed by the will upon the executors the market value of his interest would have been little, if anything—at least much less than its prospective value. The executors were authorized to act without resorting to the courts except to prove the will, and without bonds. The defendant Perry W. Lamona was one of the executors. They were empowered to convert the real estate into money and to loan it. Under such circumstances it is probable that no purchaser could have been found who would have paid anything like an adequate price, as compared with the value of the estate when it should be reduced to possession; and in the case of an adverse sale by a creditor the difficulties would be aggravated. In the first place, there was no method provided by the statutes or in the order of the court for making the sale. The entire interest of Perry W. Lamona was not directed to be sold unless the same should be necessary for the satisfaction of the debt. How was his interest to be exposed for sale? To the purchaser who would take the least interest for the amount of the debt, or in what manner? It is true, by the effect of the order of the court this was left primarily to the discretion of the executors, and later the court could have controlled it, if found necessary, but further difficulties would likely arise. Said defendant may have been entitled to exemptions, and to redemption rights as to his

interest in the lands, and how could these be protected? In case of a sale of his interest in whole or in part, the duty imposed upon the executors by the will would remain the same—they must continue in the management of the trust estate until the daughter became of age, except in case of their resignation or removal—and while the court might restrain them from a mismanagement of the estate, under some circumstances, it is clear that under a forced sale of the interest of this defendant the property would likely have brought little or nothing. His interest in a valuable estate would have been sacrificed, and he powerless to prevent it, for it was found that he had no property aside from said interest. He had no income from the estate with which to pay it, and none of the property itself could be sold—nothing more than his intangible interest, or some part of it, in the estate. Although he had a right to sell his interest in the estate at any time, and could have sold it provided he could have found a purchaser, we very much doubt whether a creditor should be given that right under the circumstances. It certainly would be inequitable, and this creditor has had to resort to a court of equity to enforce her rights. Why cannot the court protect both parties? Said appellant is willing to pay his debt. He simply asks that the sale be postponed until such time as the estate is reduced to possession, at which time tangible property can be sold, which will presumably bring its market value. In her petition the plaintiff asked for a sale of the property "within such time as the court may deem just." In this instance the time said appellant asks would not be very long, and no great hardship would result from a postponement.

Under creditors' bills, instead of directing an immediate sale, receivers have been appointed to take charge of the property and preserve and manage it for a time. As a

matter of justice this judgment should be modified, and, in the absence of any authority showing an absolute right upon the part of the creditor to have a sale at this time, we are disposed to grant said appellants the modification contended for, and the judgment is reversed and remanded accordingly.

REAVIS, ANDERS, GORDON and DUNBAR, JJ., concur.